IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|                              |   |                        |
|------------------------------|---|------------------------|
| IN RE:                       | * |                        |
| MARK ZIMMERMAN,              | * | Chapter 7              |
|    Debtor     | * |                        |
|                              | * | Case No.: 1-04-bk-01965|
| OFFICE OF THE UNITED STATES  | * |                        |
| TRUSTEE,                     | * |                        |
|    Plaintiff  | * |                        |
|                              | * |                        |
| v.                           | * | Adv. No.: 1-04-ap-00110|
|                              | * |                        |
| MARK ZIMMERMAN,              | * |                        |
|    Defendant  | * |                        |
|                              | * |                        |

## AMENDED OPINION[1]

### Procedural History

Before the Court is the Complaint of the United States Trustee ("UST") seeking an order denying a discharge to Mark Zimmerman ("Debtor") under 11 U.S.C. § 727(a)(2) and (a)(4).[2] These provisions provide for denial of a discharge to a debtor if he has intentionally concealed assets with intent to hinder, delay or defraud a creditor, or if he has knowingly and fraudulently made a false oath in connection with the case. The Complaint charges that Debtor falsified the values of certain real and personal property on his schedules and in his testimony at the meeting of creditors under 11 U.S.C. §341 ("creditors' meeting"). The UST also asserts that Debtor intentionally failed to disclose his pre-petition liquidation of $21,000 in U.S. savings bonds in his Statement of Financial Affairs. The trial on this matter was held on October 28, 2004. Briefs

---

[1] The Court's Opinion issued February 7, 2005 is amended herein to correct certain typographical and citation errors. The substance of the decision has not been changed.

[2] This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(J).

have been filed by the parties, and the matter is ripe for decision. For the reasons set forth below, Debtor will be denied a chapter 7 discharge.

**Factual Findings**

Debtor is employed as a clerk by the United States Postal Service. He is separated from his wife and is the only source of income for his household. His net monthly income is $3,117.83. Schedule "A" of his petition lists ten real properties in which he claims a fee simple interest. One of the listed properties is Debtor's residence, and eight are homes that Debtor owned for investment purposes on the date of the petition. The tenth property listed is one that Debtor purchased as an investment, but sold in October 2003.

Debtor's bankruptcy petition was filed on April 2, 2004, and the creditors' meeting was held on May 18, 2004. At the meeting, the Chapter 7 trustee specifically questioned Debtor about the values he assigned to his real properties in Schedule "A." At trial, testimony was presented as to the purchase price of the various investment properties. The following chart contains comparative statements of value for each of the real properties at issue. The various values represent the amount listed on Schedule "A," the value testified to at the creditors' meeting, and documentation of the purchase price presented at the hearing.[3]

---

[3]The chart excludes the property that was sold pre-petition.

2

| Property Address[4] | Schedule "A" | Creditors' Meeting | Purchase price | Purchase date |
|---|---|---|---|---|
| 7241 Audubon Street[5] | $ 4,000.00 | $130,000.00 | No evidence | No evidence |
| 1711 Wayne Street | $30,000.00 | $ 55,000.00 | $66,500.00 | 10/31/01 |
| 1014 S. 16th Street | $27,000.00 | $ 55,000.00 | $66,500.00 | 02/26/02 |
| 222 Elm Street | $34,500.00 | $ 59,500.00 | $25,000.00 | No evidence |
| 1015 S. 18th Street | $28,000.00 | $ 59,500.00 | $66,500.00 | 02/26/02 |
| 231 S. 19th Street | $27,500.00 | $ 59,500.00 | $66,900.00 | 01/15/02 |
| 2121 Derry Street | $34,500.00 | $ 63,000.00 | $72,900.00 | 11/15/01 |
| 539 Dunkle Street | $17,000.00 | $ 45,000.00 | $27,900.00 | 08/19/02 |
| 1919 Brookwood Street | $20,000.00 | $ 59,500.00 | $29,900.00 | 08/19/02 |
| **TOTAL** | $218,500.00[6] | $456,000.00[7] | $464,200.00 | |

Debtor acquired his investment properties in the following manner. Between October 31, 2001 and August 19, 2002, Debtor purchased each property (except his residence) from an entity known as PA Property Group, LLC ("PA Property") in an investment scheme. Debtor testified that he purchased these properties in reliance on an oral agreement under which PA Property was to rehabilitate each home, pay the rehabilitation expenses, and find a tenant to reside there while the rehabilitation was taking place. Debtor testified that when the property was sold in five to seven years he expected to make $5,000.00 to $7,000.00 profit.

According to Debtor, PA Property began rehabilitating the properties at or near the time he purchased them and placed a tenant in each residence. Debtor testified that his venture nevertheless failed to succeed due to a "wave of bad luck" including his wife filing for divorce and tenants "taking off" or becoming unable to pay their rent.

---

[4]All properties are located in the City of Harrisburg, Pennsylvania.

[5]This property is Debtor's residence.

[6]This value excludes the Audubon Street property.

[7]This value excludes the Audubon Street property.

3

When questioned about the impact the renovations would have had on the values after he purchased the properties, Debtor testified that the renovations increased the value of the homes. No testimony was presented that any event occurred after the purchase of the properties, such as casualty losses, that would have diminished their values. For each property listed on Schedule "A," in the column for "amount of secured claim," Debtor gave a figure exactly equal to the figure in the column for the current market value of the property. Some of these statements were grossly inaccurate. For instance, Schedule "A' states that the secured claim against his residence was $4,000.00. On Schedule "D," Debtor indicates that a secured claim of $67,000.00 existed against his residence. At the trial of his case, he stated that the secured claim was $50,000.00. Regarding the Elm Street property, Schedule "A" lists a market value of $34,500.00 and a secured claim of $34,500.00. In fact, there is no mortgage against the Elm Street property because Debtor purchased it with cash he obtained in refinancing his residence in 2001.

On Debtor's schedule of personal property, under the category for "hobby equipment," Debtor listed "2 electric basses; quitars (sic) and amplifiers," which he valued at $1,000.00. In fact, Debtor owns ten guitars, five amplifiers, and an electric keyboard (plus various microphones, and other related equipment). On his 1999 tax return, Debtor valued these same items at $15,000.00 for depreciation purposes. Debtor claimed these items as exempt in his bankruptcy schedules.

On his Statement of Financial Affairs Debtor answered "none" to the inquiry seeking the disclosure of any income he received, other than his regular wages, within the two years prior to

4

his bankruptcy filing. In fact, Debtor redeemed some $21,000.00 worth of United States savings bonds during 2003 incurring interest income.

Debtor was questioned intensively by the UST as to the source of the information listed in the schedules. He did not deny that he provided the information, but could not explain the discrepancies between the values listed in his schedules and the values he testified to at the creditors' meeting. Most disturbing, Debtor could not recall whether he read the petition and schedules before he signed them.

After the creditors' meeting, Debtor amended Schedule "A" as to the values of the Audubon Street and the Elm Street properties, but not as to the other properties. He did not amend Schedule "B" to properly value his musical equipment, and he did not amend the Statement of Financial Affairs to describe the liquidation of the savings bonds.

## **Discussion**

The discharge under Section 727 of the Bankruptcy Code is the primary tool used to build a debtor's fresh start. The importance of this right implies that a court will deny a discharge only in extreme circumstances. *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir 1993). "Exceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's fresh start policy." *In re Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997). "However, the very purpose of certain sections of the law, like Section 727(a)(2), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs." *In re Schifano,* 378 F.3d 60, 66 (1st Cir. 2004). *See also In re Dawley*, 312 B.R. 765, 785, fn. 32 (Bankr. E.D. Pa. 2004).

5

Section 727(a)(2) provides that the court shall grant a discharge to a debtor unless, within one year before the date of the filing of the petition, he has "transferred" or "concealed" property of the estate with intent to hinder, delay or defraud an officer of the estate. 11 U.S.C. §727(a)(2). Section 727(a)(4) provides that a court shall grant a debtor a discharge unless he has knowingly and fraudulently, in connection with the case, made a false oath or account. 11 U.S.C. §727(a)(4). In order to prevail on a complaint under Section 727(a) the UST must prove its allegations by a preponderance of evidence. *Grogan v. Garner,* 498 U.S. 279, 289-90, 111 S. Ct. 654, 660 (1991).

To deny a debtor a discharge based upon a fraudulent transfer or concealment of assets under Section 727(a)(2), a Plaintiff must prove: (1) a transfer or concealment of property; (2) belonging to debtor; (3) within one year of the petition date; and (4) with actual intent to hinder, delay or defraud a creditor. *Schifano,* 378 F.3d at 66; *Rosen,* 996 F.2d at 1531 (3d Cir. 1993) (denial of discharge on grounds of concealment of assets consists of two components: act, i.e., transfer or concealment of property, and improper intent, i.e., subjective intent to hinder, delay, or defraud creditor). To deny a discharge because the debtor made a false oath or account under Section 727(a)(4), a court must find the following facts: (1) the debtor made a statement while under oath, (2) the statement was false, (3) the statement related materially to the bankruptcy case, (4) the debtor knew the statement was false, and (5) the debtor made the statement with fraudulent intent. *In re Olson,* 916 F.2d 481, 484 (8th Cir. 1990); *In re Sowers*, 229 B.R. 151, 158 (Bankr. N.D. Ohio 1998). Fraudulent intent is an element of a case under either Section 727(a)(2) or (a)(4). "Intent can be established by circumstantial evidence, and statements made with reckless indifference to the truth are regarded as intentionally false." *In re Unruh,* 278 B.R.

6

796, 803 (Bankr. D. Minn. 2002) (failure to account for discrepancies between scheduled value and actual value of assets), *citing In re Smith,* 161 B.R. 989, 992 (Bankr. E.D. Ark. 1993). *See also In re Dolata,* 306 B.R. 97 (Bankr. W.D. Pa. 2004). A finding of actual intent to hinder or defraud in connection with the transfer or concealment of assets may be based on inferences drawn from a course of conduct. In deciding whether the requisite intent has been shown, a bankruptcy court may look to all the surrounding facts and circumstances. *Dolata,* 306 B.R. at 149.

A debtor may not insulate himself from accusations of fraud by failing to read the bankruptcy schedules prior to signing. *Id., citing In re Ward,* 92 B.R. 644, 647 (Bankr. W.D. Pa. 1988); *In re Tully,* 818 F.2d 106, 111 (1st Cir. 1987); *In re Johnson,* 82 B.R. 801, 806 (Bankr. E.D. N.C. 1988). "[A] debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." *Scimeca v. Umanoff,* 169 B.R. 536, 543 (D. N.J. 1993), *citing Tully,* 818 F.2d at 111; *Johnson,* 82 B.R. at 806. Debtors have a duty to carefully review the information included in their schedules and statements and insure that the information is accurate and complete. A material false statement or omission made by a debtor on his schedules or statement constitutes a false oath or statement under Section 727(a)(4)(A) which may justify denial of a debtor's discharge. *Burnley,* 1999 WL 717215 at 2, *citing In re Chalik,* 748 F.2d 616, 618 (11th Cir.1984), *Farmers Co-op. Ass'n v. Strunk,* 671 F.2d 391, 395 (10th Cir. 1982) (internal citations omitted.).

Debtor is alleged to have undervalued several parcels of real estate and certain personal property assets. Understandably, courts are more reluctant to deny a debtor's discharge when assets are undervalued than when they are undisclosed. At least one court has held that

7

Case 1:04-ap-00110-MDF    Doc 15    Filed 02/08/05    Entered 02/08/05 13:13:10    Desc
Main Document      Page 7 of 16

undervaluation of even a single asset is sufficient to provide a basis for denial of discharge under Section 727(a)(4). *In re Weiner*, 208 B.R. 69 (9th Cir. BAP 1997) (affirming denial of discharge based on finding that ring purchased for $6,000.00 and insured for $21,000.00 was falsely valued at $2,500). "[O]ne material misrepresentation, if accompanied by actual intent to defraud, is sufficient to result in the denial of a discharge." *In re Guthrie,* 265 B.R. 253, 263 (Bankr. M.D. Ala. 2001). However, other courts have held that undervaluation of even multiple or significant assets was not a sufficient basis for the denial of discharge. *In re Blum*, 41 B.R. 816 (Bankr. S.D. Fla. 1984) (undervaluation of two vehicles not grounds for denial of discharge when trustee had opportunity to have them appraised); *In re Wines,* 114 B.R. 794*,* 797 (Bankr. S.D. Fla. 1990), *aff'd in part and rev'd in part*, 997 F.2d 852 (11th Cir. 1993) (lawsuit seeking $361,820.00 but listed at value of $12,000.00 was not falsely valued when defendant in such suit was in bankruptcy itself and debtor valued suit based on estimated distributions). Some courts have stated simply that materiality does not turn on value. *Olson,* 916 F.2d at 484; *In re Sears,* 246 B.R. 341, 347 (8th Cir. BAP 2000)*.* The instant case involves repeated instances of substantial undervaluation of significant assets, not an isolated occurrence or explainable error in valuation. Therefore, cases such as *Blum, Wines, Olson* and *Sears* are readily distinguishable and provide little guidance on this case.

As discussed above, the instant complaint alleges both the making of a false oath and the fraudulent concealment of assets. I conclude that there is insufficient evidence of fraudulent concealment in this case. In the context of Section 727, "[c]oncealment ... includes preventing discovery, fraudulently transferring or withholding knowledge or information required by law to be made known." *In re Scott,* 172 F.3d 959, 967 (C.A.7 (Ill.),1999), *citing United States v.*

*Turner*, 725 F.2d 1154, 1157 (8th Cir.1984). Obviously, Debtor cannot be found to have "concealed" the real properties at issue in this case when he listed them plainly on the proper schedule. There is no allegation that he failed to list any properties, or that he transferred any property in preparation for filing his petition. The more clearly applicable paragraph of Section 727 is the provision that addresses the making of a false oath. I will examine the facts of the instant case under the elements of proof necessary to prevail under paragraph (a)(4).

### *(1) Debtor made a statement while under oath.*

Debtor does not contest that Schedules "A" and "B," like all schedules of a bankruptcy petition, are statements filed under oath. He also does not contest that he was under oath when he testified at the creditors' meeting.

### *(2) The statement was false.*

There are several "statements" at issue – each statement of value for each real property, the aggregate statement of value for the musical equipment, and the statement that Debtor had no income from any sources other than his regular employment in the two years preceding the filing of his petition. Comparing Schedule "A" to Debtor's testimony at the meeting of creditors shows inexplicable discrepancies in realty values as great as $126,000.00 for a single property (the Audubon Street property). In the aggregate, the values that Debtor provided at the meeting of creditors were $363,500.00 higher than those provided in Schedule "A." Given such a wide disparity in values, it is clear that the differences were not merely attributable to imprecision in the art of appraising real estate. Debtor admitted that the statements in Schedule "A" were false in the sense that they were grossly inaccurate estimates of "market value," which is the measure of value that Schedule "A" expressly requests. Debtor eventually conceded that the price at which

9

he purchased each property would provide a better estimate of its market value than the values he assigned in the schedules and at the creditors' meeting. If anything, the values of the investment properties should have increased since each parcel had undergone some rehabilitation after it was purchased. Debtor testified that the statements of value in Schedule "A" were accurate estimates of the value of each property to a hypothetical investor purchasing the property for future rehabilitation and resale. Debtor could not explain why he decided to use this measure of value when the schedules plainly ask for market value, especially when recent purchase prices (except for the Elm Street property) were readily available. Therefore, I conclude that Debtor made several statements while under oath that clearly were false.

### *(3) The statement related materially to the bankruptcy case.*

A statement of value of real property is a statement that is material to the bankruptcy case. "A false oath or statement is material if it concerns discovery of assets, business transactions, and/or past business dealings of the debtor or the existence or disposition of the debtor's property." *Casey v. Kasal,* 223 B.R. 879, 884 (E.D. Pa. 1998), *citing In re Henderson,* 134 B.R. 147, 160 (Bankr. E.D. Pa. 1991). "[T]here is little that will prove to be immaterial for purposes of required disclosure if it aids in understanding the debtor's financial affairs and transactions." *In re Coombs,* 193 B.R. 557, 567 (Bankr. S.D. Cal. 1996). In order for a falsehood or omission to be material, it need not result in a detriment to creditors. *Scimeca,* 169 B.R. at 543; *Chalik,* 748 F.2d at 618; *Strunk,* 671 F.2d at 396; *In re Arcuri,* 116 B.R. 873, 881 (Bankr. S.D. N.Y. 1990). Debtor cannot claim that because there is no equity in most of the properties, his false statements are not materially related to his bankruptcy case. The debtor must make full disclosure, "even of seemingly worthless assets." *Arcuri,* 116 B.R. at 881; *Chalik,* 748 F.2d at 618 ("the recalcitrant

debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding."); *In re Mascolo,* 505 F.2d 274, 278 (1st Cir.1974) ("knowing and fraudulent omissions of a bank account, whether or not it is closed at the time of filing, warrants the denial of discharge.")

### *(4) Debtor knew the statement was false.*

Debtor indicated that he may not have known that the statements of value were false because, he contended, he could not recall whether he reviewed his schedules prior to signing them. The *Dolata* Court discussed whether such a contention would constitute an effective defense to a charge of falsification of schedules under Section 727(a)(4).

> With respect to information that is falsely disclosed in, or that is omitted from, a debtor's bankruptcy schedules or Statement of Financial Affairs, debtors, in response to a § 727(a)(4)(A) discharge objection predicated upon the same, sometimes argue that they lacked the intent to thereby deceive . . . because, they argue in turn, they (a) never bothered to read such documents after their preparation, and (b) thus could not possibly have been aware of, and therefore necessarily lacked the intent to deceive with respect to, such false disclosure or omission. Unfortunately for such debtors, and as a matter of law, if such debtors concede that they have failed to read such documents, then they have uttered at least one, if not perhaps two, separate false oaths with fraudulent intent that are actionable under § 727(a)(4)(A). First, if a debtor fails to read his or her bankruptcy schedules or Statement of Financial Affairs but nevertheless signs the declaration that is included at the end of such documents to the effect that he or she has read such document, then such debtor has, at a minimum, fraudulently uttered a false oath for purposes of § 727(a)(4)(A) in the form of such declaration . . . . Second, if a debtor plays any role in the publication of the false disclosure or omission itself, such as by providing or failing to provide relevant information to the preparer of his or her bankruptcy schedules or Statement of Financial Affairs, then such debtor has made a false oath in the form of such false disclosure or omission, which oath is also deemed to be fraudulently uttered by virtue of such debtor's failure to read such documents because, by not so reading, the debtor exhibits a reckless indifference to the truth, which recklessness . . . is the equivalent of fraud.

*Dolata,* 306 B.R. at 149 -150.

Debtor also contended that he felt "frightened and intimated" at the creditors' meeting, that he was "basically in a daze" and essentially that he did not know what he was saying at that time. This contention is somewhat undermined by the fact that his testimony at the creditors' meeting regarding the value of the properties more closely approximated the actual purchase price than did Schedule "A."[8] The Court is not persuaded by Debtor's self-serving statements regarding his emotional state at the creditors' meeting. The main thrust of Debtor's case was that he mistakenly provided his attorney with estimates of each property's value based on its worth to an investor like himself, rather than its market value. He was under the misapprehension that such values were what the schedules sought. In contrast, however, the value he provided for his home (the Audubon Street property) was not based on its value to an investor but was based on the amount of equity he had in it. The Court finds Debtor's testimony to be less than credible on these points. Debtor's apparent belief that the properties' value to an investor would differ from any other "willing buyer under no compulsion to buy" is not borne out by the evidence nor is it logical. In addition, Debtor provided no explanation for why he gave this "investor's value" for some properties but an "equity value" for his home. Even if I find Debtor's testimony to be credible, his actions demonstrated a reckless indifference to the truth. I find it difficult to believe that someone who was purchasing real estate for investment purposes, and who had computed the

---

[8]The Court accepts Debtor's purchase price as the one that most accurately reflects its "current market value," the value that was to be reported in Schedule "A." "Market value," by definition, is "the price which a willing seller under no compulsion to sell and a willing buyer under no compulsion to buy would agree upon after the property has been exposed to the market for a reasonable time." *In re Taffi*, 96 F.3d 1190 (9th Cir. 1996); *Dempsey v. Stauffer*, 312 F.2d 360 (3d. Cir. 1962). Debtor's purchase of each property was reasonably close in time to the filing of his petition, and no evidence was introduced to suggest that PA Property was anything other than an arms' length seller.

anticipated return on his investment in five to seven years, was as naive as he would have the Court believe. His explanations were simply not credible. The wild disparity between the values given in Schedule "A" and at the creditors' meeting only further attest to Debtor's recklessness. As the cases above readily indicate, such cavalier disregard for a debtor's responsibility to correctly report his assets and review schedules prior to verifying their accuracy constitutes fraud under Section 727. "[R]eckless indifference to the truth . . . is the equivalent of fraud." *Dolata*, 306 B.R. at 149, *citing In re Dubrowsky,* 244 B.R. 560, 576 (E.D. N.Y. 2000). *See also In re Hatton,* 204 B.R. 477, 484 (E.D. Va. 1997).

Debtor's recklessness is evident not only from his statements in Schedule "A" but also from his omission of numerous pieces of musical equipment from Schedule "B." Debtor valued some $15,000.00 worth of musical equipment at a mere $1,000.00. As indicated above, at least one court would find an underreporting of value of this magnitude sufficient in and of itself to deny Debtor a discharge. *See, Weiner, supra.* In this instance, Debtor may fairly be said to have omitted rather than undervalued assets when his cryptic entry on Schedule "B" specifies that he owns two electric basses and "[q]uitars." By failing to specify that he owns ten guitars, he effectively concealed the extent of his collection. Debtor committed a similar omission by failing to state that he owned five (5) amplifiers, and he completely omitted any reference to his electric keyboard. Debtor provided no testimony at the trial on this matter that would justify excusing these omissions. Specifically, he did not testify that he had forgotten about the guitars when he filled out his schedules. Thus, I conclude that Debtor knew of these omissions when he filed his petition.

Similarly, I conclude that Debtor knowingly failed to report that he had redeemed $21,000.00 worth of savings bonds the year prior to his filing for bankruptcy. This was not an everyday transaction; it involved a significant sum of money. There is simply no reasonable explanation for Debtor having failed to report it. Perhaps an individual of significant independent wealth whose assets are managed by a third party could be excused from knowledge of a transaction of this type. But Debtor is a clerk for the United States Postal Service who makes between $30,000.00 and $40,000.00 per year. He is not an individual of significant independent wealth. It is not reasonable to conclude that he simply forgot about these transactions.

As to all of these instances of underreporting or omission I note that "no carelessness could excuse the Debtor's failure to amend his schedules promptly when he had the leisure to do so." *Tully,* 818 F.2d at 111, *quoting, In re Nazarian,* 18 B.R. 143, 147 (Bankr. D. Md. 1982). Debtor in this case amended Schedule "A" only as to two properties (the Audubon Street and the Elm Street properties). He did not explain why he did not amend it as to all properties, even though each value clearly should have been changed. I take this failure to amend as further evidence of his reckless disregard for the truth of his sworn statements.

***(5) Debtor made the statement with fraudulent intent.***

The requisite degree of fraudulent intent is shown if the debtor "engaged in behavior which displayed a reckless and cavalier disregard for the truth." *Dolata*, 306 B.R. at 149, *citing In re Wilson,* 290 B.R. 339 (Bankr. C.D. Ill. 2002). "A reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar a discharge." *In re Mazzola,* 4 B.R. 179, 182 (Bankr. D. Mass. 1980). "[E]xtreme carelessness of the debtor in filling out the Petition will not

14

excuse a false oath." *Scimeca,* 169 B.R. at 543. "The Court may infer fraud from 'a series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive.'" *In re Guthrie,* 265 B.R. 253, 263 (Bankr. M.D. Ala. 2001), *citing, In re Stevens,* 250 B.R. 750, 755 (Bankr. M.D. Fla. 2000); *Behrman Chiropractic Clinics, Inc. v. Johnson,* 189 B.R. 985, 994 (Bankr. N.D. Ala. 1995). As I have already found, Debtor was at least reckless, if not intentionally deceptive, when he verified the schedules containing statements of value that are unrelated to market value. Thus, I find that he had the kind of intent requisite to a denial of discharge under 11 U.S.C. §727(a)(4).

Debtor attempts to rebut this evidence of fraudulent intent by arguing that he did not attempt to claim an exemption for any of the real properties and so he did not stand to gain from the underreported valuations. Debtor's argument misses the point of Section 727(a)(4) and the cases that have interpreted it. "[T]he very purpose of certain sections of the law, like Section 727(a)(2), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs." *Schifano,* 378 F.2d at 66. Section 727(a)(4) states that a discharge may be denied to any debtor who knowingly and fraudulently makes a false oath in his bankruptcy case. It does not state that it applies only where the false oath has been made in an effort to obtain a financial advantage or gain for the debtor. Debtor's argument has been specifically rejected by courts interpreting Section 727(a)(4). In *In re Hooper*, 274 B.R. 210 (Bankr. D. S.C. 2001), the Court responded to the debtors' argument that errors in their schedules did not benefit them or harm their creditors. "The Court rejects these specious defenses that would require the Court to relax standards for persons who are unfamiliar with these documents despite having assistance of counsel. Bankruptcy is a give-and-take process,

15

and, in order for Debtors to receive the benefits and protections of the Bankruptcy Code, they must fulfill their role of complete disclosure to their creditors and the Trustee." *Id. at 220. See also Tully,* 818 F.2d at 111. As the Court in *In re Jackson,* 2004 WL 2595900 (Bankr. D. N.H.) stated, "[s]worn statements filed in any court must be regarded as serious business. In bankruptcy administration, the system will collapse if debtors are not forthcoming." *Id.* at *9 (holding that debtor's failure to disclose annual income of $10,000.00 from close corporation and ownership of its stock provided basis for denial of discharge under Section 727(a)(4)).

Under these circumstances, Section 727(a)(4) precludes the instant Debtor from receiving a discharge. An order to this effect will be entered.

BY THE COURT,

*Mary D. France*
Bankruptcy Judge

Date: February 8, 2005

*This electronic order is signed and filed on the same date.*

16

Case 1:04-ap-00110-MDF    Doc 15    Filed 02/08/05    Entered 02/08/05 13:13:10    Desc
Main Document      Page 16 of 16